Couch and others *against* The President and Directors of the Ulster and Orange Branch Turnpike Company.

According to the true construction of the *act to amend the act, entitled, an act to incorporate the Ulster and Orange Branch Turnpike Company,* (sess. 40. c. 213. s. 2.) the owners of lands assessed are entitled to make the road through their own lands, under the inspection of the company, by the 1st day of *August, next after the assessment is made and completed.* The commissioners having proceeded to sell lands for the payment of sums assessed after the 1st of *August,* 1817, an injunction was granted to restrain the proceedings, so as to give the owners of lands an opportunity to commence and complete the road through their lands, within the time given by the second section of the act, according to the construction so given to the act.

But the *answer* of the defendants, being afterwards put in, from which it appeared that there had been no unreasonable delay on the part of the defendants; that they completed their assessment list on the 8th of *April,* 1818, when notice thereof was given, &c.; that on the 10th of *July,* written notice was put up along the road, for the owners of lands to make proposals for making the road, &c. until the 6th of *August,* when the commissioners were to meet and review the assessment; and that the plaintiffs did not, before that time, nor at any time afterwards, offer to make the road, the injunction was dissolved.

*Jan.* 19 and 25, and *March* 31.

THE bill stated, that by the "*act to amend the act, entitled, an act to incorporate the Ulster and Orange Branch Turnpike Company,*" passed the 11th *April,* 1817, (sess. 40. c. 213. s. 1.) the Governor was authorised to appoint

three freeholders, &c. whose duty it should be, as soon as may be after the acceptance of their appointment, to make a just, equitable, and proportionate assessment on all the lands lying adjoining or contiguous to the said turnpike road, &c. That the commissioners (sec. 2.) were to make the assessment for each town separately, &c. : " *Provided,* that in lieu of the payments, &c. it should be lawful for any of the persons assessed, to make such road through his or her lands, or within the town in which his or their lands lie, *under the inspection of the P. and D. of the company, so that the same be commenced by the 1st day of August next,* and be completed within three years thereafter ; for which such persons shall be allowed in his or their assessment, and in satisfaction thereof, at and after the rate of 800 dollars the mile, or such other sum as the said commissioners shall determine," &c. That on the 15th of *April,* 1817, three free-holders, &c. were duly appointed commissioners to make assessment, &c. according to the directions of the act ; but that they did not make their assessments until the 7th of *August,* 1818 ; and by such delay deprived the plaintiffs, and the others, on whose behalf they sue, of the advantages secured to them by the proviso of the second section of the act. That the plaintiffs were advised, that they were not entitled to those advantages, unless they commenced to make the road through their lands, &c. by the 1st of *August,* 1817. That many of the persons in whose behalf the plaintiffs sue, are unable to pay the sums assessed. That in making the assessments, the commissioners have, in several instances, acted contrary to the act, and not made just and proportionate assessments. That the commissioners are required to make a map and an assessment list, and set down the lots and owners, &c. as to which several omissions had taken place. That part of the township of *Bethel* had been assessed as part of the town of *Thomson.* That on the 3d of *September,* 1818, the commissioners gave notice of the assessment list ; and that the sums assessed would be

1819.

COUCH
v.
ULSTER AND
ORANGE
TURNPIKE
COMPANY.

**1819.**

COUCH
v.
ULSTER AND
ORANGE
TURNPIKE
COMPANY.

due on the 1st of *December*, 1818, (according to the sixth section of the act,) and in case of default the lands would be sold on the 14th of *December*, at *Newburgh*. That the plaintiffs, and others, named, and whose lands are assessed, had not paid the sums assessed, &c. That they are advised that the assessment is invalid, because it was not made within the time to enable them to avail themselves of the privileges in the second section of the act, and that the assessment ought to have been made by the first day of *August*, 1817, &c.

The plaintiffs *prayed* for an injunction to restrain the defendants from proceeding to compel the payment of the assessments, and from selling, &c.

On the 10th of *December*, 1818, an injunction was granted, restraining the defendants from selling until the second *Monday* of *January*, to the end that the merits of the bill might, in the mean time, be discussed.

*January 19th.*    *Betts*, for the defendants, now moved, before answer, to dissolve the injunction, for want of equity in the bill. He contended, that according to the just and reasonable construction of the act, the words in the second section, "first day of *August next*," did not necessarily mean next after passing of the act. No time was limited by the act for making the assessment; and from the different sections, it was evident that it was never supposed that the assessments could be completed before the 1st of *August*, 1817. The third section requires six weeks notice of the assessment list, which is to remain, for the inspection of all persons interested, four weeks, so that the assessment list must be completed by the 15th of *June*, which would be altogether impracticable. So, by the sixth section, it is required that *six weeks* notice, after the assessments shall have been completed, and the maps and assessments filed, &c. should be given by the treasurer of the company, of the time the assessments are due, and the place where they are to be paid. The

eleventh and twelfth sections, also, show that the act is not to be so strictly and narrowly construed as to confine the time to the 1st of *August*, 1817. (13 *Johns. Rep.* 497. 2 *Mass. Rep.* 475. 1 *Cranch*, 299. 2 *Cranch*, 23. 52. 286. 320. *Doug.* 30. 2 *East*, 135.)

1819.

COUCH v. ULSTER AND ORANGE TURNPIKE COMPANY.

The plaintiffs do not allege that they have been misled by any misapprehension, or that they have ever applied to the commissioners for leave to make the road. They do not show any actual grievance suffered by them; but rely on a technical construction of the act. If the commissioners are not restricted to any precise time, but have a discretion to make the assessment after the 1st of *August*, 1817, there is clearly no jurisdiction in this court to interfere.

*Van Vechten*, and *H. Bleecker*, contra, relied on the case of *Belknap* v. *Belknap*, (2 *Johns. Ch. Rep.* 463.) as establishing the jurisdiction of the court in such a case as the present. There is no adequate remedy at law. The plaintiffs would be concluded by a sale; and if they could bring actions, there must be a multiplicity of suits. If the plaintiffs are to be deprived of the privilege of making the road through their own lands, it is manifestly a great grievance and injury.

THE CHANCELLOR. The persons assessed were entitled to make the road through their town, instead of paying the assessment, so that the same be commenced " by the 1st of *August* next," and completed in three years. The act meant to grant a privilege for a pretty heavy burden, and it ought not to be in the power of the company to deprive them of it, by delaying the assessment until *after the 1st of August* ensuing the passing of the act. It appeared by the bill that the assessment was not made until after the 1st of *August*, 1817; and taking the act together, and comparing one part with another, the true construction must be, that the road was to be commenced by the 1st of *August*,

1819.

COUCH
v.
ULSTER AND
ORANGE
TURNPIKE
COMPANY.

*next after the assessment made.* On no other construction can the privilege granted to the plaintiffs be preserved, and the act kept in force. It must, therefore, be deemed the necessary and true construction.

The following decretal order was, thereupon, entered:

" It appearing to the court, from the discussions upon the bill only, that those persons mentioned therein, are justly entitled, according to the true intent and meaning of the act in the said bill mentioned, in lieu of payment of the sums at which they are respectively assessed, to make the road according to the provisions in the second section of the act, by commencing the same by the first day of *August* next, (which means the first day of *August, next after the assessment made,)* and completing the same within three years thereafter, it is thereupon ordered that the motion be denied, and the injunction continued until further order," &c.

The defendants, afterwards, put in their *answer*, stating that three commissioners were appointed under the act, on the 15th of *April*, 1817, who received immediate notice of their appointment. Two of the commissioners met on the 13th of *May* following, for the performance of their duty, but declined proceeding without the other commissioner, *Kiersted*, who was a *surveyor*, and well acquainted with the lands through which the road was to run. That *Kiersted*, having been previously appointed a commissioner under another turnpike act, was engaged in the summer and autumn of 1817, in the discharge of that trust, and though repeatedly requested, was unable to attend during that time, with the other two commissioners under this act, and who could not well execute their trust without a competent surveyor. That the commissioners did not *review* and *finally settle* their assessment, until the 7th of *August*, 1818, but had completed their *assessment roll* on the 8th of *April*, 1818, at which time, and on the 20th of *June*, 1818, they caused notice of the assessment list to be published according to the

act. That on the 10th of *July* last, the defendants caused a written notice to be affixed up along the whole extent of the road, giving notice to the owners of lands assessed, that they should receive *proposals* for making such parts of the said road as are not under contract, until the 6th of *August*, when the commissioners would meet, for the purpose of reviewing their assessment: that the defendants have been, at all times before and after the 1st of *August*, 1817, until they entered into contracts for making the road, ready to permit the plaintiffs and others to make the road within their lands, &c., according to the act. That the plaintiffs did not commence working the road before the 1st of *August*, 1817, nor afterwards; nor did they, at any time, offer or propose to make the road. That on the 4th of *September* last, the defendants entered into contracts with two persons for making part of the road; and on the 7th, 8th, and 10th of *October*, they entered into other contracts with other persons, for making the other parts of the road, and that the persons with whom they have contracted were assessed, and have contracted to make the road through their lands, &c.

1819.

Couch
v.
Ulster and Orange Turnpike Company.

On the ground that the *answer* denied all the equity of the bill, *Betts* again moved to dissolve the injunction.

*March* 31*st*.

*Van Vechten*, and *H. Bleecker*, contra.

The Chancellor. When the motion was made in *January* last, to dissolve the injunction, the answer of the defendants had not come in, and the conclusion from the statement in the bill was, that the defendants, by the postponement of the assessments, had been deprived of the opportunity of making the road through their lands, or town, according to the provision in the second section of the act. The bill charged, that the commissioners did not make the assessments until the 7th of *August*, 1818, and that the delay had deprived the plaintiffs of the privilege of making the

1819.

Coucii
v.
Ulster and
Orange
Turnpike
Company.

road, and that the defendants were proceeding to sell their lands, for default of payment of the sums assessed thereon. The construction put upon the act by the bill was, that the assessments were to be completed so as to have enabled the plaintiffs to have commenced making the road by the 1st day of *August, next after the passing of the act,* and which was, of course, the first day of *August,* 1817, as the act passed on the 11th of *April,* 1817.

By the answer of the President and Directors of the Turnpike Company, it appears that the delay in making the assessments, in 1817, was unavoidable, and was the act of the commissioners, and not of the company. That the assessment roll was made and completed on the 8th of *April,* 1818, and notice thereof immediately given according to the requisitions of the act. That on the 10th of *July,* 1818, notice was affixed up, on the part of the company, at suitable places, on the whole extent of the road, giving information to the owners of lands assessed, that they would receive proposals for making such parts of the road as were not under contract. That they have at all times been ready, until the road was put out by contract, in *September* and *October,* 1818, to permit the plaintiffs and others, to make the road within their town, or through their lands, according to the act. That no such offer or proposal was ever made to them. Indeed, the bill does not state that the plaintiffs ever intended or offered to make the road.

It would be too strict a construction of the act to hold, that if the assessment was not made and completed before the 1st day of *August,* 1817, the whole object of the act must be defeated and destroyed. The facts in this case show that it could not have been done by that day, though the Turnpike Company were guilty of no *laches.* Some time was requisite to appoint, and notice, and assemble the commissioners. An accurate survey and assessment upon so great a tract of new and uncultivated country, also required considerable time. When the assessments were made, the com-

missioners were to give six weeks notice in two papers, of which one was to be in *Orange* county, and the other in the city of *New-York*, and the parties concerned were to have one month to examine the assessments, and to make objections, if they conceived themselves aggrieved. The commissioners were to review and correct the assessments, if sufficient cause was shown, and have the maps and lists filed, and then, and not before, the assessment became a *lien* on the lands assessed.

1819.

COUCH
v.
ULSTER AND
ORANGE
TURNPIKE
COMPANY.

Upon the construction given to the act, by the counsel on the part of the plaintiffs, they were not to begin to make the road until all this was done; and they contend that all this business must have been done, and the lien on the lands created, before the 1st day of *August,* 1817. I think this an unreasonable construction, for there was not sufficient time for the performance of so great a duty, and for the allowance of the six weeks, and of the one month thereafter, and of the necessary intermediate times, between the passing of the act and the 1st of *August.* We ought to adopt a construction that would enable the parties to carry the act into operation, with convenience and safety, and at the same time, secure to the plaintiffs their privilege of working the road. This can be done by construing the words, " by the first day of *August* next," in the second section of the act, to mean the 1st day of *August, next after the assessment shall have been made.* That this is the true construction of the act, appears not only from the reason and necessity of such a construction, in order to give the act due and just operation, but from the provision in the sixth section, declaring that the sums to be assessed should become due on the first day of *December* next " after the assessment hereby authorized shall have been completed." If the assessment was to be completed, at all events, by the 1st of *August,* 1817, according to the construction given by the plaintiffs' counsel to the second section, the words above

1819.

Couch
v.
Ulster and
Orange
Turnpike
Company.

quoted would be useless and without meaning. But we are to presume the lawgiver uses no words without use and meaning, and these words plainly imply that the assessment was not limited to the first of *August* next after the passing of the act.

If this be the true construction, the inquiry is, whether the plaintiffs have not had an opportunity to make the road, and whether they have not lost it, by not commencing the same by the first day of *August*, next after the assessment made. It appears, by the answer, that the assessment was made and completed by the 8th of *April*, 1818, and notice thereof given. The defendants also gave notice on the 10th of *July* following, that they were ready to receive proposals for making part of the road. These notices, we must conclude, duly came to the knowledge of the plaintiffs, and yet they do not pretend that they ever made proposals, or even intended to work the road under the inspection of the company. The proposals on the part of those persons who wished to avail themselves of the privilege of the second section of the act, were to be made before the assessments were reviewed and finally settled, and filed, and had become liens on the lands. I infer this from the provision in the second section, by which they were to be allowed in satisfaction of their assessment, at the rate of such a sum for each mile, *as the commissioners should determine ;* and the commissioners were *functi officio*, after the maps and lists were deposited. The plaintiffs had not made any effort, nor taken a single step towards electing to make the road, or commencing the same, even down to *September* last, when the company began to enter into contracts with different individuals to make the road.

It has been said, that though the assessments were made and completed on the 8th of *April*, yet that they were not reviewed, and finally settled, until the 7th of *August*, 1818, and, therefore, the plaintiffs have to the 1st of *August*, 1819, to commence their work. This would be a very unreasona-

ble construction in this case. The plaintiffs had due opportunity before the 1st of *August*, to elect to work the road, and to object to the rate or amount of assessment. They did neither; and it is evident, from their own showing, that they did not intend to do it, for they neglected every manifestation of such an intention. They laid by silently, and suffered the 1st of *August* to arrive, and contracts to be made by the company, in *September* and *October* following, for making the road, and even their lands to be advertised, in consequence of their default, either to work or pay, before they complain. It appears to me that they have no equity to support their complaint. Their objection to the proceedings would seem, by the bill itself, to be the after criticism of counsel, and if admitted, would be oppressive upon the company, and defeat all the beneficial public purposes for which the act of incorporation was granted.