Young v. Kellar.

YOUNG v. KELLAR, *Appellant.*

1. **Fraud**: SALE OF GOODS : BONA-FIDE PURCHASER, WHEN NOT. A vendee of personal property sold in fraud of creditors cannot be considered a *bona-fide* purchaser where, before payment of the purchase price, he had notice of a levy by an attaching creditor.

2. ———— : ———— : INSTRUCTION. Where there is no evidence to show that the vendee had paid for the property, it is error to refuse an instruction to that effect.

3. **Attachment**: SALE OF PERISHABLE PROPERTY : TITLE OF PURCHASER. Where attached property is sold under an order of court, because of its perishable nature, the purchaser takes a title good against the world.

4. ———— : ———— : ————. Other claimants must look to the proceeds of the sale in asserting their rights.

*Appeal from St. Louis Court of Appeals.*

REVERSED AND REMANDED.

*Nathan Frank* and *David Goldsmith* for appellant.

(1) The sale of the property in controversy, made to the defendant under the order of the circuit court of Lafayette county, vested good title in the defendant. R. S. 1879, secs. 424–25–70 ; *Taylor v. Carryl*, 24 Pa. St. 259 ; 2 Smith's Lead. Cas., part 2, pp. 973–4. The reason assigned by these authorities is two-fold, namely : (*a*) Because the proceeding is *in rem ;* and this ground is favored by *Paine v. Moorland*, 15 Ohio, 435 ; *Freeman v. Thompson*, 53 Mo. 183, and *Williams v. Armroyd*, 7 Cranch [11 U. S.] 432. (*b*) Because the sale is made by the state for the benefit of all concerned, and such sales have ample precedent, and always confer a valid title ; and this ground is supported by the following authorities, in addition to those named : Plowden's Comm. 465–6 ; 12 Coke, 73 ; *Parker v. Cockburn*, Parker's Rep. 70 ; *In re Schooner Tilton*, 5 Mason, 465 ; *Grant v. McLachlin*, 4 Johns. 34 ; *Patterson v. McVay*, 7 Watts, 482 ; *Griffith v. Fowler*, 18 U. S. 395 ; Waples on Proceedings In Rem, 744–5–6–7 ; 1 Wade on Attachment, sec. 27, p. 66 ; *Oeters v. Aehle*, 31 Mo. 380 ; *Jennings v. Carson*, 4 Cranch, 2. A provision similar to that under which the sale to the defendant was made will be found in 1 R. S. 1879, secs. 2006, 2010, and 2 R. S., pp. 332–3. (2) The admission of the evidence of the endorsement of the check from Knipmeyer to Collins, subsequent to the attachment of the property in controversy, was error. *Angrave v. Stone*, 45 Barb. 35 ; *Tucker v. Frederick*, 28 Mo. 574. (3) The exclusion of

the evidence of the order on Knipmeyer to produce his books and of his two returns thereto was erroneous. *Confer v. McNeal,* 74 Pa. St. 112. (4) The court erred in excluding evidence of the statement made by Knipmeyer to R. G. Dun & Company's Commercial Agency. This evidence was competent. Bump on Fraud. Con. [3 Ed.] 582; *Holmes v. Braidwood,* 82 Mo. 610. And it was clearly relevant and admissible. *Kramer v. Wilson,* 22 Mo. App. 173; *Singer v. Goldenburg,* 17 Mo. App. 549; *Lindauer v. Hay,* 61 Iowa, 663; *Shipman v. Seymour,* 40 Mich. 274; *Gillet v. Phelps,* 12 Wis. 392; *United States v. 36 Barrels,* 7 Blatch. 470; *Angrave v. Stone,* 45 Barb. 35. (5) The court erred in refusing the instructions numbered ten, eleven, and twelve, and in giving the instructions numbered five and six. In the absence of evidence to the contrary, the jury were bound to find that plaintiff never paid for the property in controversy, since the burden of proof was on the plaintiff; the admitted facts leave no room for question. Bump on Fraud. Con. [3 Ed.] 55; *Redfield v. Dysart,* 62 Pa. St. 62; *Merrill v. Locke,* 41 N. H. 486.

*W. C. Marshall* and *J. D. Shewalter* for respondent.

(1) If Young was the owner of the property (which depended, under the rulings of the court, on the good faith of Knipmeyer), the attachment and order of sale did not divest him of title. Process of law against A and his property is no process against B or his property, and replevin can be maintained. *Criley v. Vasel,* 52 Mo. 445-49; *Belkin v. Hill,* 53 Mo. 492; *Clark v. Brott,* 71 Mo. 473; Drake on Attach., sec. 196; *Wangler v. Franklin,* 70 Mo. 659; *Burgert v. Borchert,* 59 Mo. 85. No person can be deprived of life, liberty, or property without due process of law—property is placed in the

same category as life and liberty. *Clark v. Mitchell,* 64 Mo. 564. Attachment, except in case of non-resident defendant when the proceedings are *quasi in rem,* is merely in aid of the suit. It is the property of defendant that is to be seized. R. S., secs. 398, 402, 416; *Bray v. McClurg,* 55 Mo. 128; 57 Mo. 160; *Freeman v. Thompson,* 53 Mo. 183; 62 Mo. 516. (2) There was no error in the admission of the check given subsequent to the attachment. This matter was gone into by defendant on cross-examination, and after that, plaintiff had the right to introduce the check in support of the evidence drawn out by defendant. On the theory held by plaintiff in the case, it was competent as a part of the contract. (3) The return made by Knipmeyer in his own case to produce books, was in that case held by the court to be sufficient; was long after the transaction, and if it tended to show anything, it was only his intent at the time of making the return, and hence was inadmissible. (4) There was no error in excluding the statement to a representative of Dun's agency. The statement was in October, after the purchase of all goods; was not relied on or even seen by the creditors. (5) The instructions fairly submitted the whole case for both parties— submitting the case on the good faith of Knipmeyer in making the sale. (6) Plaintiff contends that in this case the judgment is right, and in no event, for two reasons, could there be a finding for defendant. (*a*) No such issue as fraud was set up by the answer, the issue of fraud being confined to the seller alone, and he, and not plaintiff, should have been charged. (*b*) The order of sale was made; no order was ever issued to the sheriff, and like an execution, this is his authority; not having it, he could make no sale. "The clerk shall deliver to the officer a copy of every such order." R. S., sec. 425.

SHERWOOD, J.—Action of replevin for a stock of

goods brought by plaintiff, Young, against defendant, Kellar. The answer of Kellar contained two counts; the first denies that Young is the owner of the goods, etc.; the second count sets forth that Kellar is the owner of the goods and was such owner at the time of the institution of the suit; that several suits by attachment were instituted in the circuit court of Lafayette county by divers parties against one Wm. Knipmeyer, the grounds of attachment being that Knipmeyer was about fraudulently to dispose of his property, etc.; that, by virtue of the several writs of attachment issued in those causes, the sheriff levied upon and took into his possession, as the property of Knipmeyer, the goods in controversy; that, under an order of the circuit court, the goods so levied on were sold as perishable property, and defendant became the purchaser of the goods, paid therefor, and the sheriff delivered the goods to him, and that all these things occurred prior to the institution of the present action. The answer concludes with a prayer for a return of the property, etc. To this answer the plaintiff filed a formal replication. On these pleadings the cause was tried, resulting in a verdict for the plaintiff, from which the defendant appealed to the St. Louis court of appeals, where the judgment being affirmed he appeals here.

The testimony in the cause tended to show that Knipmeyer was actuated by a fraudulent intent in the transaction, and there was testimony to the contrary. It seems that Knipmeyer was a merchant doing business in Higginsville. Becoming embarrassed in his business he went to Mr. Collins, an attorney, with the view of making an assignment. From this purpose Collins dissuaded him, on the ground that there was a good deal of red tape about an assignment, and probably a great sacrifice of the property would occur at the sale which would follow, and that it would be better for his creditors, if he could find a purchaser, to sell the entire

property at a fair price, allow some responsible person to collect the proceeds and divide the same *pro rata* among his creditors. Thereupon such a sale was made to the plaintiff, a rival merchant of the same town, at sixty per cent. of the cost price of the goods, which it appears was a fair price, considering the stock as a whole, and the agreement was that he should pay the purchase price to Collins, who should distribute the entire proceeds *pro rata*, as aforesaid. Accordingly, possession of the goods was delivered to plaintiff, but, inasmuch as the precise amount of the purchase price could not be ascertained until an invoice was taken, payment was deferred until that time. Meanwhile a check for seven thousand dollars, drawn in favor of Knipmeyer, but not indorsed by him, was handed to Collins, the agreement being that when the precise amount should be ascertained, the check given, which was thought large enough to cover the purchase price, should be exchanged for one which would cover the precise sum.

At the time this check was drawn plaintiff ordered the bank not to pay any check over two thousand dollars. It does not appear that this order was ever countermanded. On the morning of the third day after the sale and delivery of the goods to the plaintiff, and before the invoice was completed, writs of attachment were levied on and possession taken of the goods and the plaintiff was garnished. Two or three days after this "the thing got rather mixed," and plaintiff went up to Lexington to consult his attorneys, when he was informed that he would be compelled by law to stop the payment of the check, and he followed the advice of his attorneys. After consulting with them he gave in exchange for the seven thousand dollar check the one for six thousand, two hundred dollars for the goods, the latter check being indorsed by Knipmeyer to Collins.

The instructions asked and given, and asked but

refused, are as follows : For the plaintiff the court gave the following instructions :

"1. If the jury believe from the evidence that William Knipmeyer made a sale and delivery of the goods in question, previous to the attachments, to plaintiff honestly for the purpose of using the proceeds toward the payment of his debts, and with no intent to hinder, delay, or defraud his creditors, you will find for the plaintiff."

"2. The jury are instructed that the law favors and will uphold any fair and honest disposition of his property by a debtor for the purpose of paying his debts, and if the jury believe from the evidence that William Knipmeyer sold and delivered the goods in question to plaintiff in good faith for the purpose of applying the proceeds ratably among his creditors ; that it was agreed that R. A. Collins should receive the proceeds and immediately pay the same to all the creditors *pro rata;* that the sale was so made and was for a fair price ; that Young gave his check for six thousand, two hundred dollars, in payment therefor, which was received by Knipmeyer, and by him endorsed to Collins, in pursuance of the original agreement; that said check was good and would have been paid on presentation ; that said Collins now holds said check for the aforesaid purposes, then you will find for the plaintiff, even though you may believe from the evidence that, owing to controversies touching the good faith of said sale, the payment of said check has been stopped."

"3. The jury are instructed that fraud will not be presumed, but must be proved, and the burden of proof rests on the party alleging it, defendant herein, yet such proof need not be by direct or positive evidence, but may be by facts and circumstances. If, however, the jury believe from the evidence that all facts and circumstances in evidence agree as well with honesty and

fair dealing as with dishonesty, you should find the sale to have been honest and fair."

The court of its own motion gave the following instructions:

"5. The court instructs the jury that the delivery of a check for seven thousand dollars, payable to the order of William Knipmeyer by the plaintiff to R. A. Collins, under an agreement that said Collins should hold the check until the invoice of the stock in controversy was extended, and the value thereof accurately ascertained, and that the check should not be collected unless the purchase price for the same, when the same was ascertained, amounted to or exceeded seven thousand dollars, was not, in legal effect, a payment for the stock, in whole or in part; and if the jurors believe that, when the stock in controversy was seized under writs of attachment against Knipmeyer, said R. A. Collins still held said check upon the conditions above stated, and the inventory had not been extended, nor the price ascertained, and if the jurors further find that the motives of said Knipmeyer, in selling his stock of goods to plaintiff, was either to hinder, delay, or defraud his creditors, or any of them, then the plaintiff cannot recover in this action, and your verdict should be for defendant."

"6. The jury are instructed that if William Knipmeyer sold the property here in controversy to the plaintiff with intent to defraud, hinder, or delay his creditors, and that the purchase price had not been actually paid to him by the plaintiff, then it is immaterial, so far as the issues in this case are concerned, whether plaintiff knew the purpose of said Knipmeyer at the time negotiations for the sale were begun, or at the time the terms of the sale were agreed upon, or at the time of the delivery of the property sold, if you find there was such a delivery."

For the defendant the court gave the following instructions :

"7. The jury are instructed that if William Knipmeyer sold the property herein in controversy to the plaintiff with intent to force his creditors to compromise their claims against him for less than their face, then such sale was made by said William Knipmeyer with intent to defraud, hinder, or delay his creditors, and this is so even if his creditors would have been the gainers by the sale."

"8. The jury are instructed that if William Knipmeyer sold the property herein in controversy to the plaintiff for the purpose and with the intent of securing the same from attachment by creditors, or of putting it beyond the reach of ordinary process of law, and if said Knipmeyer was at the time of such sale insolvent, and in failing circumstances, then said sale was made by said Knipmeyer with intent to defraud, hinder, or delay his creditors."

The court refused to give the following instructions asked by the defendant :

"9. If the jury believe from the evidence that the circuit court of Lafayette county made the order of sale which has been read in evidence, and that the sheriff of said county executed the said order in the manner shown by his return thereto, which has been read in evidence, and that at the sale had under said order the defendant herein purchased the property herein in controversy, and paid the amount bid therefor to said sheriff, and that said sheriff thereupon delivered the said property to the defendant herein, then the sale so made to the defendant vested in the defendant the title to and ownership of said property, and the verdict of the jury should accordingly be in his favor."

"10. The jury are instructed that if William Knipmeyer sold the property herein in controversy to the plaintiff with intent to defraud, hinder, or delay

his creditors, then it is immaterial to the issues in this cause, whether or not the plaintiff participated in such intent, or what the intent or purpose of the plaintiff in purchasing said property was."

"11. The jury are instructed that the facts and circumstances in evidence do not constitute or establish any payment by the plaintiff to William Knipmeyer for the property in controversy."

"12. The jury are instructed that even if they believe that the property herein in controversy was, prior to its attachment in the attachment suits mentioned in the pleadings, sold and delivered to the plaintiff by Knipmeyer, still if they further find from the evidence, that, at the time of such sale, the plaintiffs in said attachment suits were creditors of said Knipmeyer upon the demands sued for by them, and that said property was, under the order of sale in said attachment suits which has been read in evidence, sold and delivered to the defendant herein, by the sheriff of Lafayette county, and that said sale by Knipmeyer to the plaintiff herein was made by said Knipmeyer with intent on his part either to defraud, or to hinder, or delay his creditors, then it is immaterial whether the plaintiff herein participated in such intent or not, or what the purpose of the plaintiff herein in buying said property was, and the jury should find for the defendant, Philip Kellar."

It is not intended, nor is it deemed necessary, to notice all of these instructions, or to notice them in detail. It will suffice the present purpose to notice some of them generally, and a few of them more particularly, in stating the conclusions reached.

I. In *Arnholt v. Hartwig*, 73 Mo. 484, the facts were these: Arnholt bought property of one Fredericks and took possession of the same, giving Fredericks his check for the purchase price, five hundred dollars, but requesting that it be not presented

for payment until the return of Arnholt's partner, and notified the banker not to pay it until otherwise ordered. A suit by attachment was afterwards instituted against Fredericks, based upon his fraudulently conveying, etc. After the writ of attachment was levied upon the property purchased, the check, by Arnholt's direction, was paid; and this court held that, as the evidence tended to show that the purpose of Fredericks was to hinder or delay, etc.; that though Arnholt had no knowledge of Fredericks' purpose, yet that, having paid the check after notice of the attachment levy, this prevented him from occupying the attitude of a *bona-fide* purchaser, and from prevailing as interpleader in the attachment suit.

A like ruling was made in a later case, in an action of replevin for goods bought in circumstances similar to those in the present case, where it appeared doubtful whether any of the purchase money was paid till after the levy of the execution, and in commenting on this point it was said : " Why the issue was indirectly presented by counsel and court to the jury, as to whether the plaintiffs had in fact paid the purchase money, or any part thereof, at the time of the levy of the execution, is remarkable, in view of the fact that it is conceded that over eight hundred dollars were not then paid, and it was debatable whether any of it had been paid. If the purchase price was not paid at the time of the sale, the plaintiffs could not protect themselves against Sandifer's fraud, if proved, by taking shelter under the cover of innocent purchasers." *Dougherty v. Cooper*, 77 Mo. 532.

Our statute touching fraudulent conveyances levels its denunciations against all transfers of goods " with the intent to hinder, delay, or defraud creditors," and declares all such transfers as against creditors " to be clearly and utterly void." The only refuge a vendee has from the denunciations of this statute is, that, in

good faith, he has bought and paid the purchase money prior to notice of the fraud. In a word, he cannot play the role of an innocent purchaser, while he remains in a situation to pay the money at will or to retain it at pleasure. For these reasons, instructions which left it to the jury to say whether payment had been made of the purchase price were erroneous, because they were not supported by the testimony; and also, because of misleading the jury into the belief that a payment made after notice of the levy of an attachment would give the purchaser so paying a valid title to the goods seized.

For this reason, also, it was error to refuse the eleventh instruction asked by defendant, that there was no evidence to show any payment for the property in controversy. There are circumstances where payment by means of a negotiable instrument or check, which has passed beyond the control of the maker or drawer would be a valid payment to all intents and purposes; but it cannot be pretended there was such a payment in the case at bar. Plaintiff's money in the bank was as secure from being taken on either check as if he had retained it in his pocket. There was, therefore, no payment for the goods, either in fact or in law, made by him prior to the levy of the attachments; and after that it was too late, according to the authorities, even had it then been made. 1 Wade on Att., sec. 30.

II. But an obstacle more difficult, if possible, to surmount, encounters the plaintiff in the doctrine announced in the ninth and twelfth instructions asked by the defendant, but refused. Our statute makes provisions for the sale of property when it has been attached and "is likely to perish or depreciate in value before the probable termination of the suit, or the keeping of which would be attended with much loss or expense." In such cases, the court or judge in vacation orders the sale; the sale is made by the sheriff as under writs of *fi. fa.*, and the proceeds of such sale are paid into court,

or otherwise disposed of as the court or judge may order. R. S., 1879, secs. 424, 425, 470.

This was the course pursued in the present instance, and the question presented is, whether the title of the defendant is absolute and good against all the world. Instances where things of a perishable nature, etc., are sold and the proceeds of the sale preserved to answer in the stead of those sold are not infrequent in our statutes. Thus in case of property stolen, and the owner makes no claim within six months after the conviction of the felon, the court is authorized to order it to be sold, and the proceeds paid into the county treasury ; or if it be a living animal, or of a perishable nature, the court may order its sale. R. S., secs. 2009, 2010. So, too, where property is received by a common carrier, etc., it remains uncalled for sixty days, the bailee thereof, after advertisements, may sell the same and pay the proceeds into the county treasury. R. S., secs. 6277, 6278. Likewise, boats, rafts, etc., may be sold, and the proceeds paid into the county treasury. R. S., secs. 6992, 6999, 7000, 7002, 7006, 7007, 7008, 7009, 7010. A similar course is pursued in regard to strays. R. S., sec. 356.

Doubtless there are other instances where a sale of property is authorized by law. Such sales of perishable property *pendente lite* are very ancient in their origin, and they proceed on the principle of necessity. *Baker v. Baker*, 1 Vent. 313. Courts of chancery exercise such a power of sale where property is expensive to keep, or is perishable. Rorer Jud. Sales, sec. 526 ; *Dock Co. v. Mallery*, 1 Beasly Ch. 94.

And even in the absence of statutory regulation, it has been ruled that, where an officer levies an attachment upon perishable property, that it is his duty, as the custodian of that property, not to permit it to become worthless by natural decay, and thus defeat the very object of the attachment, but to sell the same and

account only for the net proceeds. And this ruling was made in analogy to such sales in admiralty and "upon the obvious reasonableness of such a rule." *Cilley v. Jenness*, 2 N. H. 87; Drake on Attach., sec. 300.

Speaking of such sales in admiralty after appeal taken, Marshall, C. J., said: "A right to order a sale is for the benefit of all parties, not because the case is depending in that particular court, but because the thing may perish while in its custody, and while neither party can enjoy its use. * * * The property does not follow the appeal into the superior court. It still remains in custody of the officer of that court in which it was libelled. The case of its preservation is not altered by the appeal. The duty to preserve it is still the same, and it would seem reasonable that the power consequent on that duty would be also retained. On the principles of reason, therefore, the court is satisfied that the tribunal whose officer retains possession of the thing, retains the power of selling it when in a perishing condition, although the cause may be carried by appeal to a superior court. This opinion is not unsupported by authority. In his chapter on the practice of the instance court, page 405, Browne says: 'If the ship or goods are in a state of decay, or of a perishable nature, the court is used, during the pendency of a suit, or sometimes after sentence, notwithstanding an appeal, to issue a commission of appraisement and sale, the money to be lodged with the register of the court *in usum jus habentis*.' This practice does not appear to be established by statute, but to be incident to the jurisdiction of the court, and to grow out of the principles which form its law. A prize court, not regulated by particular statute, would proceed on the same principles; at least there is the same reason for it." *Jennings v. Carson*, 4 Cranch, 26.

In *Foster v. Cockburn*, Parker's Rep. 70, where perishable property has been seized on a claim of the

Young v. Kellar.

plaintiff, Parker, J., said : " But I will show, from the reason of several authorities, which have not been mentioned, that a discretionary power is necessarily inherent in the court in all cases of this nature for the benefit of the parties interested in the event of them.   Eyston and Studd, Plowd. Com. 465, 466 ; 2 Inst. 168. Wreck, by 11 Westm. ch. 4, is to be kept by the view of the sheriff, coroner, etc., for a year and a day, and if they do otherwise they are to be awarded to prison ; yet if there are perishable goods, the sheriff may, according to the sense of the act, sell within the year, even contrary to the express letter of it."

It would seem from the authorities that all sales of perishable property, which has come into the custody of the law, depend, in some instances, for their validity upon an express statutory authority, and in others, on an inherent power of the courts, into whose custody the thing seized has come, to sell the same and thus preserve something to be liable in the stead of that which is sold. And the whole power doubtless has its origin in the general authority of the state as an attribute of its sovereignty.   *The Schooner Tilton*, 5 Mason, 465 ; *Grant v. McLachlin*, 4 Johns. Ch. 34.   In the case just cited a wreck had been sold in Spain by a commissioner in accordance with the usages of that country, and Thompson, J., said : "I see no reason why a good title did not pass by the sale.   This is not a case of prize, or title founded by capture.   Such cases are governed by different rules and must be tested by the law of nations.   The sale in this case was a proceeding under a municipal regulation, and every government prescribes its own rules relative to wrecks and property left derelict.   By the English law, vessels cast on shore and abandoned, and not reclaimed within a year, are to be sold by a public officer and the proceeds placed in the hands of the government.   We have a similar statute in this

state, and I believe it was never doubted that the purchaser would obtain a valid title which would be everywhere respected."

And if the power in question is not founded on the attribute of the sovereignty of the state it is difficult to see, in some instances, on what foundation the power rests, as, for example, where a collector, without warrant, order, or other authority, sells a stray and pays into the county treasury the proceeds of such sale. R. S., sec. 356.

In a case of foreign attachment which arose in Pennsylvania, Lowrie, J., said : "But there is another view of this foreign attachment proceeding that is quite as direct and conclusive. By the execution of the writ the state takes specific chattels into its possession for certain purposes. In our practice this purpose cannot be reached in less than about nine months, and it is very apparent that this delay may be ruinous to many articles. The interest of all concerned in them is that they should be sold, and the state exercises her best discretion when she directs this to be done. This is the means adopted to protect the interests of all who have any title to the property or claim upon it, and their rights are transferred to the proceeds. Here again, if the sale should be of many articles, as it most frequently is, and if it should be made subject to all claims, except the one intended to be satisfied by the suit, it is very apparent that those claims would be most effectually destroyed by a proceeding that is pretending to protect them. In such case the government acts for the benefit of all, and its sales confer an absolute title. The counsel has referred to authorities enough to sustain so plain a principle : Parker's Rep. 70 ; Plow. 465 ; 1 Freem. 185 ; 2 Keb. 381 ; 12 Co. 73 ; 1 Vent. 313 ; 2 Inst. 168 ; 4 Johns. 34 ; 5 Mason, 481. We may add that the power with which the law invests the master to hypothecate or sell all interests in both ship and cargo

in a case of necessity is another expression of the same principle.    4 Com. Bench Rep. 149 ; 7 Mees. & W. 322 ; 1 Exch. Rep. 537 ; 3 B. & Ald. 237.    The effect of such a sale on the mariner's lien is very clear.    They were discharged from the ship and attached to the proceeds, and those they could not possibly reach without some application to the court that had the custody of them."    *Taylor v. Carryl*, 24 Pa. St. 259.

The judgment in this case was afterwards affirmed in the Supreme Court of the United States, where it was ruled that the process of foreign attachment in Pennsylvania is identical with that which issues out of the district court of the United States sitting in admiralty. 20 How. 583.

In *Megee v. Beirne*, 39 Pa. St. 50, where cattle belonging to one person had been seized under attachment as the property of another person, sold on *mesne* process as perishable property, and the real owner brought trespass against the sheriff, it was held that he could maintain the action ; that the proceeding by attachment was not a proceeding *in rem*, and did not bind the plaintiff, but that the proceeding which resulted in the sale of the property *pendente lite* was a proceeding *in rem* which conferred a valid title on the purchaser, though the sheriff could not shelter himself behind the valid title then acquired.    And the distinction is there clearly drawn between the effect of a sale of the latter description, where the property itself is merely changed in form, and one where, after judgment rendered, a *fi. fa.* issues to sell the defendant's interest in such property.    A similar distinction is taken in *Griffith v. Fowler*, 18 Vt. 390, between a sale under execution and a sale of goods lost, or estrays under statutory provisions, the latter method of procedure being held a proceeding *in rem* and transferring the absolute title.

The authorities on this subject are very fully collected in 2 Smith's Leading Cases [8 Ed.] 973, *et seq.*

It is there said : ''It should, however, be remembered that where a court of competent jurisdiction assumes the control or custody of a particular thing, the act verges on the nature of proceedings *in rem*, and should be so interpreted if requisite for the protection either of the property itself or of the parties to the proceeding. Thus an order for the sale of goods, which have been seized under an attachment as perishable, will pass a good title to the purchaser, notwithstanding any defect that may exist in that of the garnishee or defendant. * * * And it is well settled in general that a sale dictated by necessity will confer a good title on the purchaser, although the vendor has none, because the true owner is, of all men, the most interested in having the property turned into money, if it cannot be preserved.''

In quite a recent text-book, when treating of the sale of perishable goods, the author says: '' The application must be followed by proof of the allegations showing the perishable nature of the property and the necessity for its immediate conversion into money. The order contemplates nothing more than such conversion. It is no judgment affecting the claim of the plaintiff, nor the issue made by the defendant, if he has already appeared, as pleaded, nor any issue that he may afterwards make, should his appearance be later than the sale. Neither the order nor the sale affects the lien of the plaintiff, except that they transfer it from the thing thus sold to the cash substitute. * * * The lien rests on the price after such sale, so that the purchaser gets the object free from the attachment incumbrance, and all intervenors and junior attachers must look to the proceeds.'' Waples on Attach. and Garn., 295–6 ; see also *Ib.* 317, 318, to the like effect.

Another author touching the same subject, says : ''The property being *in custodia legis*, to abide the event of the suit without change of ownership, the

application for the order of sale is a duty owing to the defendant, and the order is made to protect property from diminution or deterioration. Although the purchaser takes a perfect title to the perishable article, the title of the defendant immediately attaches to the money realized at the sale, still, however, subject to the lien. Thus the title to the property remains unchanged until the judgment is duly executed." 1 Wade on Attach., sec. 27 ; and see *Ib.*, secs. 45, 136, 230. This transmutation of perishable property into imperishable money, in consequence of an order of sale, has been recognized by this court on two occasions. *Oeters v. Aehle*, 31 Mo. 380 ; *Snead v. Wegman*, 27 Mo. 176.

As the result of these authorities, and indeed upon the bare reason of the thing, I am abundantly satisfied that the question propounded as to the validity of the defendant's title must be answered in the affirmative. To hold otherwise would be to deny the intended and legitimate effect of such sales, and render them instead of a benefit, a truly conservative measure, something of the very opposite nature ; a mere futile formula, conferring no benefit and preventing no sacrifice. *Ex gr.*, take the case of a carload of bananas levied upon by virtue of a writ of attachment. The order of sale is imperatively demanded, but if no valid title can be obtained, who would buy except at such a ruinous sacrifice as to defeat the very object of the attachment. Moreover, the same theory which would hold such sales invalid, to pass an absolute title, would destroy in like manner the validity of other statutory sales made in cases already instanced. The right to change the form of the attached property into a different form, and to subject it, in its changed form to the lien of the attachment, must bear with it, as a necessary coincident, the right to give validity to the title arising from the sale, which brings about such an exchange of property. In view of what has been said, it is unnecessary to notice

objections or authorities to the effect that A's property cannot be sold under *fi. fa.* for B's debt, etc., since there is no such issue in this case. The correct way to state the matter here at issue is this: That where A's property of a perishable nature is improvidently attached as the property of B, the court, acting as a prudent and careful custodian of that property, will make such order in the premises as will, as far as possible, prevent A's interests from being sacrificed.

Holding these views we reverse the judgment and remand the cause to the St. Louis court of appeals, with instructions to that court to enter an order reversing the judgment and remanding the cause to the circuit court, with instructions to proceed in conformity with this opinion. All concur.