Henry McNichols, Appellant, *v.* Fritz Richter; George A. Rubleman, Respondent.

May 1, 1883.

1. Debtor and Creditor — Fraudulent Conveyances. — An insolvent debtor cannot, under pretence of paying his debt, assign more property than is reasonably sufficient for that purpose.

2. —— A creditor cannot, in addition to securing his own debt, take a conveyance of an unreasonable amount of his debtor's property, to enable him to delay other creditors.

3. —— Recoupment. — In such a case the whole property conveyed may be seized by other attaching creditors, and the fraudulent vendee cannot recoup his advances actually made.

4. —— A creditor cannot use a just demand to protect an insolvent debtor's estate from other creditors.

5. —— Fraudulent Conveyances. — A conveyance the consideration of which is partly to hinder, delay, and defraud creditors, is void.

6. —— To entitle the vendee of property transferred in fraud of the vendor's creditors to be treated as a *bona fide* purchaser, it must appear that he actually paid the purchase-money before he had any notice of the fraud.

Appeal from the St. Louis Circuit Court, Horner, J.

*Reversed and remanded.*

Gideon D. Bantz and T. A. Russell, for the appellant: A creditor, after notice of his debtor's intent to hinder, delay, or defraud his other creditors, cannot make further advances to his debtor and take property therefor from this debtor ; such a transfer of property is fraudulent as against other creditors. — *Arnholt* v. *Hartwig*, 73 Mo. 485. A creditor who knowingly takes property in value largely exceeding his debt cannot pretend to be judged by the rule relating to preferences of creditors, but stands as a purchaser, as against other creditors ; and, therefore, if while taking such property he has notice of his debtor's intent to hinder, delay, or defraud, the transfer will be fraudulent as to other creditors. So, likewise, if he has notice of such facts and circumstances as would put a man of ordinary prudence upon his guard. — *Potter* v. *McDowell*, 31 Mo. 69 ; *The State to use* v. *Estel*, 6 Mo. App. 6. In such case the purchaser cannot retain any part of the property. — *Allen* v. *Berry*, 50 Mo. 90. If a creditor takes property from his debtor by way of preference, and such property in value largely exceeds his debt, then even though the creditor in so doing acted in good faith and took more than sufficient through necessity or inadvertence, his title to the surplus over and above his debt, is voluntary and constructively fraudulent as against other creditors. — *Potter* v. *McDowell*, 31 Mo. 62 ; Bump's Fr. Conv. 303.

Henry W. Bond, for the respondents.

Thompson, J., delivered the opinion of the court.

The plaintiff is an attaching creditor of Fritz Richter. The contest is between him and George A. Rubleman & Co., who interpleaded in the attachment suit claiming the property attached. There was a jury trial and a verdict and judgment in favor of the interpleaders, from which the plaintiff has appealed.

The leading facts shown at the trial were that Fritz Richter, down to a period hereafter stated, carried on a

considerable business in St. Louis as an upholsterer; that he employed a good many hands and did a business of the value of about $40,000 a year; that he carried a considerable stock of goods, consisting of furniture, finished and unfinished, and of materials purchased for use in his business, amounting at the date in controversy, to perhaps $6,000; that he was indebted to various parties to an amount which is not very clear — perhaps to the amount of $5,000; that his principal creditors were, and for some time had been, George A. Rubleman & Co.; that they were engaged in the hardware business in St. Louis, and that he bought the hair-cloth, tacks, springs, and perhaps some other materials which he used in his business, of them, running up a very considerable bill in the course of each month, which was generally settled at the end of the month by his giving to them his note at ninety days; that when these notes would mature in bank he would sometimes find himself unable to meet them, and then they would advance to him a certain amount of cash for that purpose, charging the advance to him on their books. In this way, at the date in question, he had become indebted to them in about the sum of $3,100, one-half of which, speaking roughly, consisted of an open book account, and the other half of three negotiable notes, which he had given them, which they had not negotiated, and which had not yet matured.

On Saturday, the second day of July, 1881, the interpleader's book-keeper called Mr. Rubleman's attention to the size of Richter's account. Mr. Rubleman went to Richter, told him that the account must be reduced, and that if it could not be reduced, Richter must sell them furniture enough to liquidate it. The result of the conference was, that Richter agreed to sell to the defendants, furniture enough to liquidate the account, and that it was arranged that his book-keeper should attend to the details. The

next day, July 3rd, was Sunday; and then followed July
4th, a holiday; and on Tuesday Mr. Rubleman sent his
partner, Mr. Fleischer, to Richter's establishment to com-
plete the transaction and receive the goods. The goods
were valued, turned over to Fleischer, loaded into wagons,
and hauled off to Block, Tyler & Co., auctioneers, and
afterwards attachments were levied on them by this plaintiff
and by other creditors of Richter. A creditor of Richter saw
the wagons hauling away the goods on July 5th, went into
Richter's establishment, saw Fleischer there, and denounced
it as a fraud upon the other creditors of Richter. The result
of the transaction was, that Rubleman & Co. took everything
in the way of materials and stock in trade that Richter
had, leaving nothing, as we infer from the record, except
his tools and store fixtures. Then towards the close of the
day, July 5th, and after this other creditor of Richter had
appeared on the scene and warned Fleischer that the trans-
action was a fraud upon Richter's other creditors, Ruble-
man & Co. made a further advance to Richter of $500 —
$400 in a note and $100 in cash; and the transaction ended
by Richter turning over to them all his accounts, embrac-
ing accounts against various solvent parties, amounting to
perhaps $1,000, and even his account books, which they
carried off to their place of business. In fact, they
swept the platter, taking everything that Richter
had in the way of merchandise or credits. Richter put
himself almost entirely within their power, and his testi-
mony tends to show that he did it upon the understanding
that they would in some way assist him by selling back a
part of the goods to him at the same price, but that, with
the exception of making some small advance to him, they
did not keep this agreement.

Of course, we do not express any opinion upon the con-
clusions of fact to be drawn from this testimony. We
have not thought it necessary to go into its details

minutely, since it was a case tried before a jury. It is sufficient for us to say that there was evidence before the jury tending to show —

1. That this transfer was made by Richter to Rubleman & Co. with the intent of hindering, delaying, and defrauding his other creditors, and that Rubleman & Co. were well acquainted with Richter's circumstances, and knew this fact and participated in this intent.

2. That property and solvent accounts were turned over by Richter to Rubleman & Co. of more than double the value of his indebtedness to them.

3. That this advance of $500 which had been made by Rubleman & Co. to Richter on the afternoon of July 5th, in payment of which they had taken a still further quantity of goods and accounts, was made by them with knowledge of the fact that Richter had other creditors, and that this advance would assist him in converting tangible property, which would be available to them, into intangible property which they could not reach.

Of course, the evidence adduced by Rubleman & Co. tends to negative these propositions, and to show on their part a clear transaction by which they had taken the goods of their debtor in payment of their debt, as they might lawfully do, provided they took it at a fair valuation, although the necessary consequences of their doing so would be to hinder and delay other creditors of their debtor. We may say that the evidence introduced on the part of Rubleman & Co., if true, proves too much, because it proves that Richter is still indebted to them in the sum of about $500, — that is, after taking all he had except his tools and store fixtures, in payment of his prior indebtedness to them, they gave him $500 out of mere benevolence, knowing that, after they had stripped him bare, he would not have the means of repaying it.

The principal grounds upon which we are asked to reverse this judgment, relate to the refusing of instructions which

were requested by the plaintiff. The court seems to have put the cause to the jury upon the first hypothesis above formulated in a manner free from objection, except that the instructions given did not cover the elements of the case presented by the second and third propositions.

Upon the second hypothesis the plaintiff requested the following instruction, which was refused : —

" 13. The jury are instructed that, while a debtor has the right to transfer sufficient of his property to any one of his creditors in payment of a just debt, to the exclusion of his other creditors, yet such transfer must be made in good faith, for that purpose only, and he will not be permitted, in such disposition of his property, to transfer more in value than is sufficient to pay such debt. If, therefore, you believe from the evidence that Richter, under the pretence of preferring Rubleman & Co. as creditors, conveyed to them property largely exceeding in value the amount due said Rubleman & Co., with the intent thereby to hinder, delay, and defraud his other creditors, and that Rubleman & Co. took said property, with knowledge of such facts, then you are instructed that such transfer was void as to said Richter's other creditors, and you will find for the plaintiff McNichols."

The refusal of this instruction was clearly erroneous. The rule under this head has been thus laid down by the supreme court : " A purchaser may buy property from a debtor and pay its value for it ; yet, if the purchase is made with a fraudulent intent to defeat a creditor's execution, the sale will be void. But a debtor may prefer one creditor to another, and may lawfully assign property sufficient to satisfy the preferred debt. But, under pretence of paying a debt, he is not permitted to assign more property than is reasonably sufficient for that purpose, to the prejudice of other creditors." *Potter* v. *McDowell*, 31 Mo. 62, 74. And again : " The law will not suffer a creditor, although he may have a just demand against his debtor, to use that debt

as a screen to protect the debtor's estate from his other creditors, when that estate much exceeds in value the amount of the debt. When a creditor, by fraud, will attempt to defeat the claims of other creditors, there is no hardship in postponing his demand, although a just one, to those which he has endeavored to defeat." *Kuykendall* v. *McDonald,* 15 Mo. 416, 420. It will be observed that the instructions which were given entirely ignore this salutary principle of law, and leave it entirely out of view as an element of the case. The above instruction would have been a correct presentation to the jury of the law as thus laid down, in its application to the facts which the plaintiff's evidence tended to show.

With reference to the third hypothesis above stated, the instructions which were given were likewise silent. The law upon this feature of the case has been likewise clearly formulated in decisions of the supreme court. " If one, knowing that a debtor is selling his property to hinder, delay, or avoid the payment of his debts, buys it and pays the full value of it, thereby enabling the debtor to carry out his fraudulent design, such sale will be adjudged fraudulent, because the purchaser becomes a participant in the iniquitous purpose of the debtor." *Shelley* v. *Boothe,* 73 Mo. 74, 76 ; *Kuykendall* v. *McDonald,* 15 Mo. 416, 420 ; *Potter* v. *McDowell,* 31 Mo. 62, 74. In respect of this advance of $500, made at the close of the transaction and under the circumstances attending it, Rubleman & Co. stood toward Richter in the attitude of purchasers, and not in the attitude of creditors. They could not, under the circumstances disclosed by this record, and especially after they had been warned by one of Richter's creditors of the fraudulent purpose of Richter, make further advances to him and take the final remnants of his stock in trade and credits in payment of such advances. They could not do this, although the agreement to do it may have been made at the first interview, on July 2d. This is clearly shown by the

doctrine laid down by the supreme court in the late case of *Arnholt* v. *Hartwig* (73 Mo. 485), where it is held that, to entitle the vendee of property transferred in fraud of the vendor's creditors to be treated as a *bona fide* purchaser, it must appear that he actually paid the purchase-money before he had any notice of the fraud, and that it is not sufficient that he had agreed upon the purchase before receiving notice. A conveyance, the consideration of which is *partly* to hinder, delay, or defraud creditors, is void *in toto*. It is an entire thing. It cannot be split up and held good in part and bad in part.

Nor is there any such doctrine known to the law as a right on the part of the fraudulent vendee to set off or recoup the advance which he actually made. *Allen* v. *Berry*, 50 Mo. 90. If a creditor, in addition to securing his own debt by taking an assignment of a reasonable amount of his debtor's property, which he may lawfully do, purchases an additional quantity with a view of assisting the debtor to hinder, delay, or defraud his other creditors, it avoids the whole transaction, and the law punishes the fraud of the creditor by remitting the property to the attachments and executions of other creditors, and postponing the fraudulent creditor to the others. So here, if Rubleman and Fleischer, at the time when they made this advance of $500 to Richter, either knew, or had reasonable ground for believing, that it was the purpose of Richter to place the remainder of his tangible property beyond the reach of his creditors, the whole conveyance was void. All the property assigned remained, in the eye of the law, the property of Richter, and subject to the attachments of his creditors. Upon this feature of the case, the following instructions were asked by the plaintiff: —

" 1. The court instructs the jury and declares the law to be, that if Richter intended, by the transfer of his property, to hinder, delay, or defraud his creditors, and if one of his creditors notified one of the interpleaders that such transfer

was fraudulent, then the interpleaders will not be permitted to disregard such notice and advance money to Richter on account of such transfer, even though at the time such notice was received, the interpleaders were in possession of the property transferred. And in that event the jury will not consider the moneys so advanced as a part of the consideration of the transfer.

" 2. The court instructs the jury, that if Fleischer called upon Richter, and requested and obtained Richter's permission to purchase goods sufficient to satisfy the indebtedness then existing in favor of Rubleman & Co., and that pursuant to such request and consent, Fleischer, on July 5th, selected the goods mentioned in the inventories read in evidence, and thereupon took charge and control of said goods and inventories of them, and that thereafter the said $500 (consisting of a $400 note and $100 in cash) mentioned by the witnesses, was advanced by Rubleman & Co. to Richter, then the jury will not consider the said $500 as a part of the consideration of the goods so selected, inventoried, and taken under control and charge of Fleischer for Rubleman & Co."

These instructions did not aptly present the law applicable to this feature of the case. They were, perhaps, objectionable to the rule which forbids the court from advising the jury what inferences of fact they should draw from other facts in evidence. They were incomplete, and it is doubtful how the jury would have understood them. They were, therefore, properly refused. If the plaintiff's counsel had presented apt instructions upon this head, it would have been the duty of the court to give them; and, upon another trial, this omission may be corrected.

Our attention has been drawn, in a general way, to the rulings of the court in excluding evidence offered by the plaintiff. The rulings of the learned judge upon some of these matters of evidence were, perhaps, too stringent. In a case where the decision depends largely upon the knowl-

edge and intent of the parties to a transaction, any testimony, otherwise competent, which fairly tends to throw light upon the question of the knowledge and intent with which they acted, ought to be admitted.

These observations are, perhaps, sufficient to indicate the general view which we take of the principles of law applicable to the various features of this case. For the error of refusing the plaintiff's thirteenth instruction, we reverse the judgment and remand the cause. All the judges concur.