# CASES DETERMINED

# ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS.

## MARCH TERM, 1890.

M. D. WELLS *et al.*, Respondents, v. J. W. P. JONES *et al.*, Appellants.

St. Louis Court of Appeals, April 29, 1890.

1. **Bills and Notes:** TRANSFER AS COLLATERAL SECURITY FOR ANTECEDENT INDEBTEDNESS. The transfer of a promissory note as collateral security "for antecedent indebtedness does not, without more, constitute the transferee a holder for value.

2. **Corporations:** SUBSCRIPTION OF STOCK PROCURED THROUGH FRAUDULENT MISREPRESENTATION. If one be induced to take capital stock of a corporation by fraudulent misrepresentations by a corporate officer that the entire capital stock had been subscribed and paid for, when in fact but little of it had been thus paid or subscribed for, he can, in the absence of an estoppel, set up the misrepresentation as a defense to an action on a note given by him to the corporation in payment of the subscription, if the holder be not a *bona fide* purchaser for value.

(1)

3. ———— : ———— : EFFECT OF INSOLVENCY OF CORPORATION. In an action upon such note by a creditor of the corporation, who is not a purchaser for value, the right of the stockholder to set up such fraud by way of defense is not affected by the insolvency of the corporation ; but whether the stockholder could set up the fraud in a direct proceeding against him by creditors of the corporation after such insolvency is left undecided.

*Appeal from the Greene Circuit Court.*—HON. JOS. CRAVENS, Judge.

REVERSED AND REMANDED.

*Thrasher, White & McCammon,* for appellants.

(1) The evidence in this case shows such fraud and misrepresentation on the part of the said Thompson Manufacturing Company, in obtaining notes from defendants, as to defeat a recovery on said note by said corporation. The rule, that whatever fraud creates justice will destroy, applies to subscription for capital stock in a corporation. Morawetz on Private Corp. [2 Ed.] secs. 105, 106, 839 ; Thompson on Liabilities of Stockholders, secs. 142, 143 ; *Upton v. Tribilcock,* 91 U. S. 45 ; *Vreeland v. Stone Co.,* 29 N. J. Eq. 190. (2) The notes sued on, having been given in pursuance of a contract for a subscription to the capital stock of the Thompson Manufacturing Company, and the conditions of said contract never having been performed on the part of said corporation, works such a failure of the consideration for said note, as would defeat a recovery on said note by said Thompson Manufacturing Company, the original payee. The corporation would have to show the performance of the condition before it could recover. Thompson on Liability of Stockholders, secs. 186, 190, and cases cited ; Morawetz on Private Corp. [2 Ed.] sec. 79 ; *Haskell v. Worthington,* 94 Mo. 560 ; Wait on Insolvent Corporations, sec. 608 ; *Chase v. Railroad,* 38 Ill. 215 ; *Railroad v. Dunn,* 39 Maine,

595; *Jewett v. Railroad*, 10 Ind. 539; *Railroad v. Croswell*, 5 Hill, 383. ( 3 ) The note sued on having been given to said Thompson Manufacturing Company, in part payment for capital stock of said corporation, and no other consideration, was wholly without consideration, under section 933, Revised Statutes of Missouri, 1879, as between the makers and original payee. R. S. 1879, sec. 933, p. 170; 1 Dan. Neg. Inst., secs. 198, 808; *Pelts v. Long*, 41 Mo. 533; *Parsons v. Randolph*, 21 Mo. App. 353; *Downing v. Ringer*, 7 Mo. 585; *Hunt v. Nickerbocker*, 5 Johns. 327. ( 4 ) The note having been transferred by the Thompson Manufacturing Company to respondents, as collateral security for a pre-existing debt, without any new consideration to support the transfer, respondents are not innocent purchasers, or holders of said note, for value, and hold the same subject to all the equities and defenses, existing against the original payees of said note. *Goodman v. Simonds*, 19 Mo. 106–117; *Brainard v. Reavis*, 2 Mo. App. 490; *Feder v. Abrahams*, 28 Mo. App. 457; *Ryan v. Chew*, 13 Iowa, 589; *Bank v. Barber*, 56 Iowa, 550; *Bone v. Tharp*, 63 Iowa, 223; *Stalker v. McDonald*, 6 Hill ( N. Y. ) 93; *Bank v. Franklin*, 55 N. Y. 235; *Ins. Co. v. Church*, 81 N. Y. 218. ( 5 ) This proceeding is an action at law, commenced before a justice of the peace, to recover against the maker on a promissory note, and is not in any sense, in form or legal effect, a proceeding by a creditor of a corporation against a stockholder, for his unpaid subscription for stock of said corporation. And respondents' only right to recover in this cause, if they have any, is as assignees of the note sued on.

*Frank S. Heffernan* and *James R. Vaughan*, for respondents.

The plaintiffs can recover on the note sued on as given for unpaid subscription to the capital stock.

*Beck v. Henderson*, 76 Ga. 368; *Winston v. Brooks*, 4 Lawyers' Rep., annotated, 507. The note sued on was given for the stock of the Thompson Manufacturing Company. If as between the company and the subscribers for the stock, appellants in this case, there was any fraud which entitled them to rescind the contract of subscription, this should have been done by them before the insolvency of the corporation and the intervention of the rights of the creditors. After debts have been created and the corporation has become insolvent the right of rescission is barred. Cook on Stock and Stockholders, secs. 163, 164. The general rule is, that fraud or mismanagement of the directors as regards corporate affairs, will not constitute a defense to an action founded upon a subscription. Wait on Insolvent Corp., sec. 540; *Chetlain v. Ins. Co.*, 86 Ill. 220; *Honady v. Railroad*, 9 Ind. 263; *Merrill v. Reaver*, 50 Iowa, 404; *Dorris v. French*, 4 H. N. Y. 292; *People v. Logan County*, 63 Ill. 374. The fraudulent representations of the projectors of the company could not affect the subscription or release the subscribers. *Oglevie v. Ins. Co.*, 22 How. (U. S.) 380; *Railroad v. Dudley*, 14 N. Y. 336; *Kelsry v. Oil Co.*, 45 N. Y. 505; *Litchfield v. Church*, 29 Conn. 137; *Graff v. Railroad*, 31 Pa. 489; *Ins. Co. v. Floyd*, 74 Mo. 286–291.

THOMPSON, J.—This action was commenced before a justice of the peace, upon a promissory note of the following tenor:

"$10.00.      SPRINGFIELD, MISSOURI, May 19, 1888.

"Four months after date we promise to pay to Thompson Manufacturing Company, or order, ten dollars, for value received, negotiable and payable without defalcation or discount, at the Central National Bank, Springfield, Missouri, with interest at the rate of eight per cent. per annum from date until paid.

                                        "JONES BROS.

"By J. W. P. JONES."

On the back of which note is the following indorsement:

"Pay to the order of M. D. Wells & Co.
"THOMPSON MANUFACTURING CO.
"Per G. A. FRIZZELL, Treasurer."

The circuit court, sitting as a jury, made a finding and rendered a judgment for the plaintiff, and the defendant appeals to this court.

There were no written pleadings. At the trial, one of the defendants, J. W. P. Jones, by whom the note was executed, testified that the only consideration for the note was capital stock of the Thompson Manufacturing Company; that Mr. Frizzell, the secretary and treasurer of that corporation, came to the defendants and wanted them to sign ten notes of ten dollars each for two shares of the capital stock of the corporation; that Mr. Frizzell had the notes all made out, and the certificate of the stock executed and signed and ready to deliver. The witness also testified that Mr. Frizzell, at the time, stated to the defendants that the Thompson Manufacturing Company had then fifty thousand dollars' paid up capital; that said corporation had purchased the Cotton Mill building, so called, in Springfield, Missouri, and was going to use it as a factory for the manufacture of willowware; that the machinery for that purpose had been bought by the company and shipped, and would soon arrive and be put up, and the factory in operation; that the corporation was desirous of closing up all matters concerning its stock; that he, Frizzell, wanted to deliver the certificates, and would take the notes for the same; that it was all right; that others were taking stock in the same way and giving notes for it, and that the factory of the company would soon be running. The witness further stated that, relying upon these representations, he signed the ten notes, each for ten dollars, and all of the same date, payable to the Thompson Manufacturing Company, one

of which was the note in suit. "We signed the notes as Mr. Frizzell requested, and gave them to him, and he gave us the certificate for the two shares of stock of the Thompson Manufacturing Company. I am acquainted with the Cotton Mill building in Springfield, Missouri, before spoken of. Said Thompson Manufacturing Company never did buy the said Cotton Mill building, nor put any machinery in it, nor have any machinery here in Springfield. Said corporation never put up any machinery, nor manufactured anything whatever in Springfield, Missouri, at any time. But, afterwards, said corporation did engage in the mercantile business, and opened, and ran for a time, a store or two in Springfield, here, where they sold toys and notions. This mercantile business is the only business ever done here in Springfield by said corporation. They never owned any real estate or machinery here. We, the defendants, never attended any of the meetings of the stockholders or directors of said corporation, and never voted at any such meetings, and never had anything to do with the management of said company, and never knew anything about its business or property, except the statements made to us by Mr. Frizzell, until long after the notes had been signed and delivered to Mr. Frizzell, and until one of the notes had become due and we had paid it. We paid the note before we learned that the statements made by Mr. Frizzell about the corporation owning said Cotton Mill building and machinery, and that it was soon to start a factory, were not true." The witness also testified that he did not examine the public records to see how much of the stock of the corporation was paid up; that, when he found that the stock was not paid up, he sued the company for the cancellation of his notes, and offered to give up his stock. The record, introduced in evidence, showed that that action was commenced October 19, 1888.

Wells v. Jones.

The articles of association of the corporation, which were put in evidence, recited: "The capital stock is fifty thousand dollars, to be fully paid, divided into one thousand shares of the par value of fifty dollars each. The entire stock has been actually and *bona fide* subscribed, and fifty per cent. thereof paid up in lawful money of the United States, and is in the custody of the persons named as the first board of directors." Then followed a list of shareholders, seven in number, with the number of shares purporting so have been subscribed by each, aggregating one thousand shares. The articles were signed and sealed by the same persons, who affixed the same number of shares, aggregating one thousand, opposite their respective names. These articles were filed in the office of the secretary of state on the nineteenth of May, 1888.

It appeared by the testimony of Mr. Frizzell, one of the incorporators and secretary and treasurer of the company, in consequence of whose representations the defendants were induced to purchase the shares and give the notes in question, that, notwithstanding the above recitals in the articles of association, he had never paid anything on his eighty shares, of the aggregate par value of four thousand dollars, except in services. It was understood that he was to hold but five hundred dollars' worth of the stock. The reason why the additional thirty-five hundred dollars' worth was issued to him was to complete the organization of the company and to place the stock, so that it could be assigned to other parties; and it was transferred back to the company for that purpose. For this five hundred dollars' worth of stock, a certificate was issued to him and remained in his name. This was all he was to pay for. He had not paid for all of it. He was to pay for it out of his salary every three months. He had paid about one hundred dollars in that way. The remaining thirty-five hundred dollars' worth of stock remained as it was

transferred to the company.   Mr. Frizzell further testi-
fied :   " Mr. Pomeroy holds two hundred shares, Mr.
Thompson two hundred, Mr. Kirst one hundred shares,
Mr. Phillips twenty shares.   Mr. Abbott and Mr.
Atwood are shown by the incorporation papers to hold
one hundred shares each, but this stock was never
received by them ; the certificates are still in my posses-
sion.   In the same way, Mr. Pomeroy and Mr. Thomp-
son are shown by the incorporation papers to have
received one hundred shares, in addition to what they
actually did receive.   The certificates for these are issued,
but are, also, in my possession as secretary.   There are
one hundred shares to Mr. Pomeroy, one hundred to
Mr. Thompson, one hundred to Mr. Atwood, one hun-
dred to Mr. Abbott, and seventy to myself—making a
total of four hundred and seventy shares—that were
never delivered to anybody, except that taken by parties
around town, for which they gave their notes.

"*Q.*   How much was taken by parties in this way ?
*A.*   Between seven and eight thousand dollars.

"*Q.*   How much money altogether has been paid
into your hands, as treasurer of the company for stock ?
*A.*   To estimate it, I would say in the neighborhood of
*eight hundred dollars.*

"*Q.*   By whom was this paid ?   *A.*   That was paid
by parties around town here, who took stock.

"*Q.*   Has other property, other than money and
the notes of parties around town, come into your hands,
as treasurer of the company, in payment for stock ?   *A.*
Mr. Ramsey gave a lot, valued at three hundred dollars,
for six shares ; that is all that has come into my hands
as treasurer.

"*Q.*   Has any money or other property been paid
to you as treasurer of the company in payment for
stock, by Mr. Pomeroy, or Mr. Thompson, or Mr.
Kirst ?   *A.*   No, sir.

"*Q.*   Has any been paid by Mr. Phillips ?   *A.*   He
was to pay for his out of his salary.

"*Q.* Did the Thompson Manufacturing Company, as a company, ever have any money, except this you have mentioned? *A.* Nothing from the sale of stock, but it has had from the sale of goods, and money borrowed by the company.

"*Q.* How much money has the company borrowed? *A.* In the neighborhood of thirty-eight hundred dollars.

"*Q.* How did the company pay for goods they have purchased from time to time? *A.* What has been paid was paid by the sale of goods, the money borrowed, and also some of the eight hundred dollars, mentioned, may have been applied in that way. The money borrowed was secured by F. S. Heffernan, as security on the notes at the Bank of Springfield. * * *

"*Q.* Where, now, are all the notes given by parties about town for their stock? *A.* They are given *as collateral security* to parties to whom we owe bills, not as security for money borrowed."

It also appeared that the certificate for two shares of the capital stock of the corporation, which was issued to the defendants as the consideration of their ten notes above spoken of, recited: "Capital stock, fifty thousand dollars, fully paid." It certified that Jones Bros. were the owners of two shares of the capital stock of the Thompson Manufacturing Company, "fully paid up and of the par value of fifty dollars each," etc.

The plaintiffs gave evidence tending to show that the Thompson Manufacturing Company purchased a bill of boots and shoes from the plaintiffs, who were merchants doing business at Chicago, aggregating fifteen hundred and ninety-five dollars and thirty-five cents; that this bill was placed in the hands of Mr. Heffernan, an attorney at Springfield, for collection, about the twenty-fifth or twenty-sixth of August, 1888; that Mr. Heffernan presented the bill to the manufacturing company; that they declined to pay it, claiming that it was not due, and for the further reason that they had no money. Mr. Heffernan testifies: "I found that said

corporation had no money except notes taken by it from stockholders for stock of said corporation. It could not pay this claim, and had no other property on which to secure it, except the notes taken for stock, and the merchandise, as I have mentioned ; and so I took these notes sued on, and many others of the same kind, as *collateral security* for the payment of this debt of M. D. Wells ( meaning M. D. Wells & Co.), against the Thompson Manufacturing Company, which I was trying to collect. These notes, given to the corporation in payment of its stock, was all I could get *as security* for the debt; and so I took them, and the notes against the defendants were assigned to plaintiff by said Thompson Manufacturing Company, *as collateral security*, for the payment of the debt of said company to plaintiff. When I took the notes sued on, I knew it was given for part of the purchase price of capital stock of said Thompson Manufacturing Company." The plaintiffs also introduced evidence showing that on February 14, 1889, they had recovered a judgment in the circuit court of Greene county against the Thompson Manufacturing Company for sixteen hundred and sixty-seven dollars and fifteen cents ; that on May 6, an execution had been issued on this judgment, which had been, on May 9, returned unsatisfied.

There was other evidence which we do not deem it material to recite. Much of the above evidence was objected to, and exceptions were duly saved to the admission of it ; but we do not deem it material to consider these exceptions in detail. It seems to us sufficient to state our views as to the theory on which the case should have been tried.

This is not a proceeding by a creditor of a corporation to collect from a stockholder what is due upon his subscription to the capital stock of the corporation, or what remains unpaid upon shares of such capital stock, of which he is the holder. It is not a direct action

against the stockholder of a dissolved corporation for that purpose under section 745 of the Revised Statutes of 1879; nor is it a motion for execution against a stockholder of an insolvent corporation by a judgment creditor of such corporation under section 736 of the same statutes. It is not a proceeding against a stockholder as such, in any form known to our law. It is merely an ordinary action at law upon a promissory note, against the makers thereof, by the indorsees and holders thereof. In such actions the law allows the maker to set up the fraud of the original payee, whereby he was induced to execute the note, or the want of consideration for the promise embodied in the note.

Whether he can set up such defense against one who has acquired the note before maturity as *collateral security* for a pre-existing debt due him from the payee, is a question which rests in a very unsatisfactory shape upon the judicial decisions in this state. Those decisions were reviewed in the opinion of this court delivered in the case of *Conrad v. Fisher*, 37 Mo. App. 352, at pages 414 to 418. It was there shown that the initial case of *Goodman v. Simonds*, 19 Mo. 106, in which our supreme court held that one who thus acquires a negotiable note is not a purchaser for value, and does not get it discharged of equities, has been *twice* overruled in this state upon cases in judgment, *once* thereafter reaffirmed and applied, and *nine times* thereafter expressly or impliedly recognized as the law. It was there said, after reviewing the cases in this state: "If the doctrine of *stare decisis* were strictly adhered to, it would unavoidably result in the conclusion that one, who takes negotiable paper as collateral security for an antecedent indebtedness, takes it as purchaser for value; for such was ruled in our supreme court in *Boatmen's Savings Institution v. Holland*, 38 Mo. 49, where the question was before the court in judgment, which is the

last controlling decision upon the subject. But, in view of the manner in which our supreme court has subsequently dealt with the question, I do not think that we are at liberty to hold that it is concluded by that decision. We should rather regard it as still an open question.''

Regarding it as an open question, we find that the decisions in other jurisdictions on the question are conflicting, as pointed out in that opinion. We also find that in *Railroad v. National Bank*, 102 U. S. 14, 25, the question has, in the highest federal court, been finally resolved in favor of the *dictum* of Mr. Justice STORY in *Swift v. Tyson*, 16 Pet. (U. S.) 1, and contrary to the doctrine of our supreme court in *Goodman v. Simonds, supra*, and in conformity with the later holding in *Boatmen's Savings Institution v. Holland, supra*.

But this holding seems to be contrary to most of the analogies of the law which bear upon the question. Take, for instance, the analogy of conveyances of lands or goods in fraud of the creditors of the transferor. All the decisions of which we have knowledge are to the general effect, that, to entitle the transferee to be treated as a purchaser for a valuable consideration, it must appear that he actually paid the purchase money before he had any notice of the fraud; it is not sufficient that he had agreed to pay it, or even that he had given his check in payment, unless the check had also been paid. *Arnolt v. Hartwig*, 73 Mo. 485; *Dougherty v. Cooper*, 77 Mo. 528; *Young v. Kellar*, 94 Mo. 581; *McNichols v. Rubleman*, 13 Mo. App. 515, 522. Another well-known analogy is that of conveyances of land, subject, in the hands of the grantor, to prior unrecorded conveyances, vendor's liens, resulting trusts or other secret equities. In modern times land has entered into the operations of commerce almost to the same extent as personal property. And yet, upon this

question, the decisions in this and in all other jurisdictions, so far as we know, speak only in one way. In order to entitle the innocent grantee to protection against a prior unrecorded conveyance, vendor's lien or other equity, he must have parted with something of value as a consideration, before receiving notice of the prior conveyance or equity. See 2 Pomeroy's Equity Jurisprudence, sec. 749, and numerous cases there cited. In view of the numerous decisions and *dicta* in our supreme court, and in this court, supporting the doctrine of *Goodman v. Simonds, supra,* we feel bound to hold, until otherwise instructed by our supreme court, that one who takes a negotiable promissory note, merely as collateral security for an antecedent indebtedness, takes it subject to any equities subsisting in favor of the maker against the original payee ; though, where the note is taken in payment, we concede that the rule is different.

We conclude, then, that the plaintiffs, when they acquired the note which is the subject of this suit, acquired the same rights against the defendants, as the holders of it, which the manufacturing company had. What those rights were, upon the undisputed evidence in the case, appears to be fully settled by two decisions in this state, one of them rendered by this court, and the other by the supreme court. The case of the *Occidental Ins. Co. v. Ganzhorn,* 2 Mo. App. 205, shows that no action can be maintained against one who, acting in good faith, has been induced by fraudulent representations to give his note as a stock subscriber to a sham corporation set on foot without authority of law. We need not enlarge upon this decision. Many of the facts were strikingly like those in the case before us. So far as we know, it has not been trenched upon or overruled by any subsequent decision in this state. The case arose between the sham corporation and the subscriber, and of course it was not decided with reference

to the rights of creditors, as against stockholders who have been induced to become such by fraud.

The other decision, to which we allude, is that of our supreme court in the somewhat recent case of *Haskell v. Worthington*, 94 Mo. 560, *loc. cit.* 572, 573. That was an action by the assignee of a corporation, upon a subscription to its capital stock, to recover the par value of the shares for which the defendant had subscribed. The court held, that, as the assignee stood in the shoes of the corporation, it was a good defense to show that the corporation had entered into active business with less capital stock subscribed than the amount stated in its articles of incorporation,—the defendant not having by his conduct estopped himself from setting up the defense. The statute, under which this present corporation purported to have been authorized, provided that the articles of agreement should contain "the amount of the capital stock of the corporation ; the number of shares into which it is divided, and the par value thereof ; that the same has been *bona fide* subscribed, and one-half thereof actually paid up in lawful money of the United States, and is in the custody of the persons named as the first board of directors or managers." Revised Statutes, 1879, sec. 926. The undisputed evidence in this case showed that articles of incorporation were filed containing this recital, and that it was grossly and shamefully false ; and while the defendants admit that they were not misled by this, not having examined the public record, their undisputed evidence shows that they were induced to subscribe for the shares by fraudulent representations made by the financial officer of the corporation in respect of existing facts of the most important character. With this evidence before him, the learned judge gave an instruction, declaring the law to be that the plaintiffs were entitled to recover. In other words, he held that, conceding the truth of the defendant's evidence, it did not state a defense, as matter of law. Judging from the theory on

which the case has been argued in this court, this must have been upon the view that the case is to be governed by the law in respect of the liability of stockholders of a corporation. That law, as held in England and in several courts in this country, is to the effect that, after the insolvency of the corporation, a stockholder proceeded against by creditors or by their representatives, cannot set up that he was induced to become a stockholder by the fraud of the corporation or its authorized agent. 2 Morawetz on Private Corporations, sec. 840, and cases cited; Cook's Stock, etc., sec. 163, and cases cited. We are not prepared to dispute this principle; but, as we do not find that it has been distinctly decided in this state one way or the other, we do not wish to be understood as expressing an opinion upon it. But we are of opinion, for reasons already stated, that it has no application to the present case.

The judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.