M. L. WETMORE, Respondent, v. HENRY M. WOODS, Appellant.

### Kansas City Court of Appeals, May 6, 1895.

1. **Fraudulent Conveyances:** INSTRUCTION. An instruction, which embodies correct principles in ordinary cases of fraudulent conveyances, was properly refused in this case, since it ignored the fact that part of the goods replevined were, on the undisputed evidence, the property of the plaintiff.

2. ———: INNOCENT PURCHASER: PAYMENT: NOTE. Where a purchaser for value, from a fraudulent vendor, has actually paid the purchase price before advised of the vendor's fraud, he is protected; but it is not sufficient that the purchaser had, before notice, given his negotiable, promissory note, unless actually paid or negotiated in the hands of an innocent purchaser before such notice.

3. ———: ———: ———: ———. Where, after notice, a purchaser for value has by legal process been compelled to pay a note for part of the purchase price to the holder, he will be entitled to protection as a *bona fide* purchaser.

*Appeal from the Polk Circuit Court.*—Hon. Argus Cox, Judge.

Affirmed.

 *G. M. Sebree* and *C. W. Hamlin* for appellant.

In all the decisions it is set forth, as plain as language can make it, that the vendee of personal property conveyed in fraud of the vendor's creditors is not entitled to be treated as an innocent purchaser, unless he has actually paid the money before notice of the fraud. *Arnholt v. Hartwig,* 73 Mo. 485; *Dougherty v. Cooper,* 77 Mo. 532; *Young v. Kellar,* 94 Mo. 581.

 *J. D. Abbe* for respondent.

(1) As to instruction number 1 asked by appellant, the court did right in refusing it, for it had no support from the evidence. It broadly demanded a verdict for appellant for all the property under the circumstances stated in that instruction, when the unquestioned evidence is that a large amount of the property replevined never belonged to Ford at all, and was taken by appellant without any right or excuse. This instruction is wrong, both in its hypothesis of facts and statement of law. (2) As to the fourth instruction given for respondent, there was no error, and the cases referred to by appellant in his brief are not in point. If the trade was made in good faith on the part of Wetmore, then the title and right to the property passed to him, and the only right Ford, Mrs. Ford or the creditors of Ford had was to collect the balance, if any, due on it. *Young v. Kellar,* 94 Mo. 592.

GILL, J.—This is an action in replevin, growing out of the following state of facts: In the early part of 1893, R. W. Ford, a merchant of Springfield, moved his stock of goods to the town of Fairplay, Polk county, Missouri, and commenced business in the same storeroom occupied by the plaintiff, M. L. Wetmore. He continued in business at this place until about the third or fourth of May, 1893, when he absconded, leaving the country with another man's wife. At that time he was indebted to various parties, and among others, to the Springfield Grocer Company and A. J. Oliver, of Springfield. On the fifth of May, 1893, Mrs. R. W. Ford received a letter from Ford, telling her he would not be back again and to dispose of the goods, take the money and go to Springfield to live. At the time Ford left, his stock of goods amounted to about $530, which, after some negotiations, Mrs. Ford sold to plaintiff Wetmore at fifty cents on the dollar. He paid her part cash and executed his note to her, due in sixty days, for the sum of $171.17.

On the eighth day of May, the Springfield Grocer Company and A. J. Oliver commenced suit by attachment before a justice of the peace, and on writs issued in said case, the defendant, Henry M. Woods, who was constable at Fairplay, levied on the stock of goods in controversy, and held the same until the plaintiff took them away by the institution of this action. These attachment writs were levied on the goods a few days after Wetmore gave his note to Mrs. Ford for the balance of the purchase price. Mrs. Ford kept the note till it was due, then sued thereon and obtained a judgment against Wetmore, thereby forcing him to pay the balance due on the goods. It is also proper to state that, according to the plaintiff's testimony, which is undisputed, the constable levied on about $75 worth of

goods that did not belong to the Ford stock. The evidence, too, in plaintiff's behalf, tended to prove that at the time of the purchase of the goods, he knew nothing of Ford's insolvent condition; that he had notice of some indebtedness in and about Fairplay, but this was paid at the time out of the money plaintiff gave to Mrs. Ford.

The issues were submitted to a jury, under instructions from the court, resulting in a verdict for plaintiff, and from a judgment thereon, defendant has appealed.

The defendant assigns but two errors: *First*, that the court erroneously gave plaintiff's instruction number 4; and, *second*, committed error in refusing defendant's instruction number 1.

The defendant's instruction number 1, which was refused, reads as follows: "You are instructed that before the plaintiff can recover in this case, you must find that he bought the goods in good faith, without notice of any fraud on the part of Ford, and had actually paid the purchase price before the levy of attachment. The agreement to purchase, or the giving of his promissory note for the purchase price agreed upon, or any part thereof, does not constitute him an innocent purchaser, and, unless you find from the evidence in this case that the plaintiff bought the goods in good faith and for a valuable consideration, and that he had paid for the same before the levy of the attachment, then you will return your verdict for the defendant."

Plaintiff's number 4, and which the court gave over defendant's objection, is as follows: "If plaintiff bought of Mrs. Ford a part of the goods and property sued for, and Mrs. Ford had authority to sell them, and a part of the proceeds were directed to be paid to her, and plaintiff executed and delivered to her a negotiable promissory note for the payment of the same, due and payable to her, that, as far as R. W.

Ford was concerned, it was payment to him, and if said note was given before plaintiff had knowledge of any fraud on the part of R. W. Ford (if there was any fraud on his part), then it was, for all the purposes of this case, a valid payment for said goods and property."

While now defendant's refused instruction embodies correct principles of law in an ordinary action of this nature, yet, under the peculiar facts we have here, its refusal was not error. As already stated, the defendant, acting under the attachment writs, not only took from plaintiff's possession the goods he had bought from Ford, but levied as well on other goods, to the value of $75, which the plaintiff had and which were never owned by Ford. The testimony to that effect seems undisputed. Clearly, then, the plaintiff was entitled to these articles, regardless of his good or bad faith in the Ford transaction. That plaintiff may have been a fraudulent purchaser of the Ford stock, did not subject plaintiff's other goods, acquired from other sources, to the claims of Ford's creditors. And yet, under said instruction, if given, this would have been the result.

Plaintiff's fourth instruction, already quoted, was also erroneous as a declaration of law applicable to the facts therein stated. It in effect announces the proposition that Wetmore must be protected as a *bona fide* purchaser of the goods he may have bought from the fraudulent vendor, Ford, if he (Wetmore) at the time, and before knowledge of Ford's fraud, executed and delivered his negotiable promissory note therefor; in other words, that the mere giving a negotiable promissory note, while ignorant of the fraud, was an actual payment of the purchase price, which would save and protect Wetmore as an innocent vendee.

This is not the law. The decisions uniformly declare that, before the vendee can claim protection as a

*bona fide* purchaser for value, it must appear that he actually paid the purchase price before advised of the vendor's fraud; that it is not sufficient that the purchaser had, before notice, given his negotiable promissory note (unless actually paid or negotiated and in the hands of an innocent holder). *Arnholt v. Hartwig*, 73 Mo. 484; *Young v. Kellar*, 94 Mo. 590; *McNichols v. Richter*, 13 Mo. App. 515; *Cheek v. Waldron*, 39 Mo. App. 25; *Wells v. Jones*, 41 Mo. App. 12; *Stein v. Burnett*, 43 Mo. App. 481; *Greenlee v. Marquis*, 49 Mo. App. 294. As pointedly stated in the last case: "A purchaser without notice, to be entitled to protection, must be so, not only at the time of the contract of purchase, but also at the time of the payment of the purchase money."

The courts have adopted the equitable rule of protecting the good faith purchaser to the extent of payments actually made before notice of the fraud, but no further. So, then, admitting that when Wetmore bought the goods, he had no knowledge of Ford's bad faith and fraudulent intention to swindle his creditors, yet the plaintiff would only be protected in said purchase to the extent of payments actually made before notice of that fraud, and the mere giving a negotiable note would not, ordinarily, be deemed an actual payment.

It does not follow, however, from the foregoing considerations that this judgment should be reversed. Another element appears in the evidence, which saves the plaintiff's case, notwithstanding the technical error in the foregoing instruction. It stands admitted on the record that plaintiff was, by force of a judgment against him, compelled to pay the note he executed for the balance due on the goods. His payment, then, of the note was not voluntary. He declined to pay said note until forced thereto by suit brought by Mrs. Ford, the

holder thereof.    The plaintiff, then, can not be treated as a purchaser, voluntarily paying the fraudulent vendor after the notice of the fraud.    He occupies now the advantageous ground of being compelled, at the end of a lawsuit, to pay the balance of the purchase money. After notice of the alleged fraud charged on his vendor, the plaintiff did his duty by resisting the demand for the balance of the purchase price, but said demand was adjudged against him.    In this respect, then, plaintiff must occupy the like position as if the entire purchase price were paid before notice of the alleged fraud of his vendor—in the same attitude as if the negotiable note had been, in fact, transferred before due and he had been compelled to pay same at the suit of an innocent holder.

In view, then, of this feature of the case, the error pointed out in plaintiff's fourth instruction becomes harmless.    For the facts hypothetically stated in that instruction being found by the jury, together with the further undisputed fact that plaintiff did not voluntarily pay the note given for the balance of the purchase price, make a clear case for the plaintiff.

The judgment, therefore, will be affirmed.    All concur.